UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO CHAVEZ,<br><br>        Plaintiff,<br><br>v.<br><br>KINGS COUNTY, et al.,<br><br>        Defendants. | Case No. 1:20-cv-00369-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S FOURTEENTH AMENDMENT CONDITIONS OF CONFINEMENT CLAIM AGAINST DEFENDANT KINGS COUNTY, PLAINTIFF'S FOURTEENTH AMENDMENT CONDITIONS OF CONFINEMENT CLAIM AGAINST BEJARNO, CERVANTES, AND ANDERSON, AND PLAINTIFF'S FOURTEENTH AMENDMENT MEDICAL CARE CLAIM AGAINST DEFENDANT CARRASCO, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF No. 17)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

      Pablo Chavez ("Plaintiff") is a prisoner[1] proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on March 11, 2020. (ECF No. 1). On May 14, 2020, Plaintiff filed a First Amended

---

[1] It appears that Plaintiff was a pretrial detainee at the time of the incidents alleged in the complaint. Accordingly, the Court will apply the pretrial detainee legal standards. However, the Court is not deciding that these are the applicable legal standards.

1

Complaint. (ECF No. 15). On June 9, 2020, the Court screened Plaintiff's First Amended Complaint and found that it stated a cognizable claim. (ECF No. 16). The Court gave Plaintiff thirty days from the date of service of the order to either: "a. File a Second Amended Complaint, which the Court will screen in due course; b. Notify the Court in writing that he does not want to file an amended complaint and instead wants to proceed only on his claim against defendants Bejarno and Carasco based on inadequate medical care; or c. Notify the Court in writing that he does not want to go forward on only the claims found cognizable by this order or file an amended complaint, in which case the Court will issue findings and recommendations to a district judge consistent with this order." (Id. at 15-16).

On July 8, 2020, Plaintiff filed his Second Amended Complaint. (ECF No. 17). The Court has reviewed the Second Amended Complaint and finds that the following claims should proceed past the screening stage: Plaintiff's Fourteenth Amendment conditions of confinement claim against defendant Kings County, Plaintiff's Fourteenth Amendment conditions of confinement claim against defendants Bejarno, Cervantes, and Anderson, and Plaintiff's Fourteenth Amendment medical care claim against defendant Carrasco.

Accordingly, the Court issues these findings and recommendations to the assigned district judge, recommending that this case proceed on Plaintiff's Fourteenth Amendment conditions of confinement claim against defendant Kings County, Plaintiff's Fourteenth Amendment conditions of confinement claim against defendants Bejarno, Cervantes, and Anderson, and Plaintiff's Fourteenth Amendment medical care claim against defendant Carrasco, and that all other claims and defendants be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

I.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 9), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

**II.    SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff brings this action against Nurse Practitioner Wendy Bachleor, Medical Administrator Gina Ferrera, Doctor Sidah Naheem, Kings County, Deputy Barjarno, Corporal Carrasco, Deputy Dusane, Corporal Shrieber, Corporal Pitman, Deputy Cervantes, Deputy Travato, and Deputy Chennault.

On January 27, 2020, Plaintiff addressed his back issues with the medical unit, which consists of Wendy Bachleor, Gina Ferrera, and Naheem Sidah. Plaintiff told them that he was in a work-related injury and that he recently had been in a car accident. Plaintiff told them that

3

he will require a bottom tier bunk chrono.  Plaintiff also told them that he was in physical therapy before his incarceration.  Plaintiff was given ibuprofen and Tylenol for the pain.

Plaintiff was in Cell 52, then 61 top tier, then 59 top tier.  The medical consultants ignored Plaintiff's pleas for help.

From February 22, 2020, through April 21, 2020, Plaintiff put in numerous requests and grievances stating that his pain level was at a ten.  Plaintiff was only provided with ibuprofen and Tylenol, even after he explained that he was in extreme pain.  The pain and suffering lasted for three months.

On April 21, 2020, Plaintiff's medications were changed to Indomethacin and Tramadol.  Plaintiff was on Indomethacin for two days and left on Tramadol before he was taken off the Indomethacin.  Throughout these events Plaintiff's medication kept running out for two days, leaving Plaintiff in pain.  Plaintiff told many nurses, Cotton, Tiffany, Clarissa, C.J., K.C., Lopez, and Kim, as well as numerous deputies, Blackburn, Cota, Bonja, and Trijillo, that he was in pain and that his medication was not working.  The medical unit ignored Plaintiff and his medical issues.  This inadequate medical care continued to May 28, 2020.

Gina Ferrera would answer her own grievances every time Plaintiff put in a grievance. Plaintiff asked her if this was illegal.   She answered that she is never in the wrong.  She has done this since Plaintiff has been in Kings County Jail.  She has delayed Plaintiff's right to due process by taking her time answering Plaintiff's requests and grievances, leaving Plaintiff in pain and suffering.

On February 22, 2020, while attempting to get into his top bunk, Plaintiff slipped and fell five feet to the hard concrete floor.  To get on the top bunk Plaintiff had to put one foot on the toilet and one foot on the sink, then spring forward into the top bunk.  This method is very dangerous but is the only way up.  Plaintiff has tried different methods.  Plaintiff tried using the desk, but the desk is five feet away from the top bunk.  Plaintiff also tried using the bottom bunk, but there was nothing for Plaintiff to grab on to to help him with the climb.  Additionally, the bottom bunk is five feet away from the top bunk.

Plaintiff addressed this issue with many deputies, as well as Sergeant Rodriguez,

4

Lieutenant Day, and Lieutenant Thomas.  They all agree that it is dangerous and are in the process of putting in ladders to help inmates with the climb.  Also, medical unit staff still have not issued Plaintiff a bottom bunk chrono.

On February 26, 2020, Plaintiff had court.  Plaintiff informed Deputy Barjarno that he would not be able to walk to court because of the accident that occurred on February 22, 2020.  Plaintiff asked Barjarno if he was aware of Plaintiff's condition, and he said yes.  Barjarno then called Corporal Carrasco, who walked Plaintiff to medical.  Plaintiff told Carrasco that walking is very painful.  Carrasco told Plaintiff that they have all day.  At medical, Carrasco got Plaintiff a wheelchair and pushed Plaintiff to court, where deputy Cellballos took over.  Deputy Cellballos took Plaintiff to Department 5 and then back to his cell.

On February 27, 2020, Plaintiff once again informed Barjarno that he will have trouble attempting to walk to court and that he will need the wheelchair again.  Barjarno then walked Plaintiff to medical where he dropped Plaintiff off to the transporting deputy, Dusane.  Barjarno whispered something to Dusane.  Dusane then walked to Plaintiff and asked if he had a wheelchair chrono.  Plaintiff states that he did not know, but that Dusane could ask Barjarno and Carrasco because Carrasco got Plaintiff a wheelchair the day before.  Numerous deputies saw Plaintiff in a wheelchair on February 26, 2020.  Dusane told Plaintiff to get in line because he does not have a wheelchair chrono and will have to walk.  Plaintiff told Dusane that walking is very painful.  Dusane stopped the line of inmates and put Plaintiff in the front of the line.  As Plaintiff painfully walked he saw Carrasco, who did not intervene.  Dusane humiliated Plaintiff then pulled Plaintiff out of the line again and put him in the back.  Plaintiff once again told Dusane that he was in pain.  As Plaintiff struggled to make it to the transporting cells, an unknown deputy put a wheelchair in front of Plaintiff's cell.  Cellballos put Plaintiff in the wheelchair and pushed him to Department 5.

Carrasco, along with many others, saw Plaintiff painfully walk to court, further injuring his back.  Plaintiff was denied a wheelchair.  The medical unit once again did not issue Plaintiff a wheelchair chrono, and Carrasco, along with Barjarno and Dusane make poor judgments.

On March 3, 2020, while Plaintiff was in Cell 59, classification (Shrieber and Pitman)

recklessly moved inmate Nunez into the cell. Because there was no ladder, Nunez used the toilet and sink to get himself into the top bunk. He slipped and fell, injuring himself. He went to medical, where the medical unit cleared him to go back to Cell 59. Barjarno and Cervantes brought Nunez in.

Plaintiff proceeded to ask these deputies how it was going to work because Plaintiff and Nunez both cannot sleep on the bottom bunk. Cervantes went to medical and then returned. He stated that Nunez has a bottom bunk chrono, but Plaintiff does not. He told Plaintiff that Plaintiff would have to sleep on top. Plaintiff told these deputies to get ahold of classification and switch him out with a different inmate. They refused. Plaintiff told these deputies that he will not sleep on the top bunk because he is injured. Plaintiff then told Deputy Anderson the situation. Classification could have easily moved Plaintiff to a different bunk instead of choosing to leave Plaintiff sleeping on the floor. These deputies were aware of the incident that occurred on February 22, 2020. Barjarno also knew about the incident that occurred with the wheelchair on February 26, 2020, and on February 27, 2020. Due to this recklessness, carelessness, negligence, and retaliation, Plaintiff had to sleep on the floor.

On a grievance to the medical unit on May 28, 2020, Plaintiff stated that all he wants is relief from his back pain. He let the medical unit know that he feels helpless, as though nobody cares, and now due to the pain is feeling suicidal.

On May 31, 2020, Plaintiff was in the law library and started to have extreme back pain. It was around shift change. So, as Deputy Travato and Deputy Chennault were doing their security checks, Plaintiff stopped Travato and told these two deputies that he was in serious pain. Plaintiff told Travato that he needed to go to the medical unit. Travato told Plaintiff no, that there is no one here to help Plaintiff. He then looked at Chennault and Chennault said "come on Chavez, you now [sic] the program." Plaintiff once again stated that he is in pain, and asked what Travato meant when he said no one was here. Travato stated that nobody works on the weekend. Frustrated, in pain, and depressed, Plaintiff then went to his cell where he laid down, hoping the pain would go away.

Travato is aware of Plaintiff's problems as he was one of the first responders when

Plaintiff got injured in Cell 59. Chennault is a regular deputy that works in C6 pod. So, both of these deputies were aware of Plaintiff's medical needs and problems.

As Plaintiff laid on his back, he heard a knock on his window. It was Ferrera and Deputy Brooks, coming to check on Plaintiff because of the grievance he filed on May 28, 2020. Ferrera asked Plaintiff if he was suicidal. Confused and in pain, Plaintiff asked her what she was talking about. Plaintiff also told her he filed the grievance days ago, and could have been dead. She then asked again if Plaintiff was suicidal from the pain in his back and the deputies ignoring his medical needs. Plaintiff banged his head against the window of his cell and told her that he is tired of the inadequate medical care he has been receiving. Numerous deputies came to Plaintiff's cell. Two of them asked what was wrong. Plaintiff told these deputies that he was in pain. Sergeant Cortez told Plaintiff to cuff-up. Plaintiff told him that he is in pain and asked when he will receive adequate medical care. Cortez again told Plaintiff to cuff up. Plaintiff told him no, not until he gets seen or gets pain medication.

Nurse Tiffany then showed up to Plaintiff's window and gave Plaintiff Ibuprofen. Plaintiff asked her if she could document that Plaintiff is tired of deputies retaliating against Plaintiff and of the inadequate medical care. Plaintiff then told Cortez and Cellbalos that he will cuff up. They escorted Plaintiff to the safety cell.

In the safety cell Ferrera came to Plaintiff's widow to look at the knot on Plaintiff's forehead. Plaintiff once again asked when he will get the adequate medical care that he needs for his back. Plaintiff then had to stay all night in the safety cell.

Mental health came to see Plaintiff on June 1, 2020. Plaintiff told Hector Calbarllos that the pain in his back makes his PTSD go sky-high. Plaintiff has anxiety, is depressed, feels guilty, frustrated, sad, and most of all, helpless. Calbarllos then looked at Plaintiff's head and cleared him.

On June 1, 2020, Plaintiff was called to the medical unit to see Bachleor. She stated that she is sorry for not taking his needs seriously. Plaintiff told her that he has been in pain for so long. She then told Plaintiff, "here's the plan. Physical therapy, MRI, Methylprednisolone, muscle relaxer, and trimodol [sic]."

7

On June 18, 2020, Plaintiff was sent to physical therapy with Deputy Goldsmith. Plaintiff was asked numerous questions. Right away the therapist saw the problem and popped Plaintiff's spine back into place. Plaintiff felt instant relief. Goldsmith stated that Plaintiff's spine was popped out of place and that from it being out of place who knows what damage it may have done.

Bachleor was fired from the medical unit, and Ferrera resigned.

Plaintiff never got a write-up for his behavior on May 31, 2020. Kings County Jail, along with deputies, made the wrong decisions regarding Plaintiff's medical care and mental health care. Plaintiff was not disciplined because Kings County Jail and the medical unit knew that they were in the wrong denying Plaintiff medical attention for so long.

### III.   ANALYSIS OF PLAINTIFF'S CLAIMS

Plaintiff's complaint is, at times, difficult to understand. What follows is an analysis based on the Court's best understanding of Plaintiff's Second Amended Complaint.

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir.


2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978)

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation

marks omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. Conditions of Confinement

The elements of a pretrial detainee's Fourteenth Amendment conditions of confinement claim against an individual defendant are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.
>
> With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[] on the facts and circumstances of each particular case.

Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (alteration in original) (footnote, citation, and internal quotation marks omitted); see also Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018); Watkins v. Tuolumne Cty. Jail, 2019 WL 2177642, at *5 (E.D. Cal., May 20, 2019).

"Local governing bodies … can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where … the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690 (footnote omitted).

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. These are action[s] for which the municipality is actually responsible." Connick, 563 U.S. at 60-61 (citations and internal quotation marks omitted) (alteration in original).

Plaintiff appears to bring a conditions of confinement claim against Kings County because ladders were not provided to access top bunks. Plaintiff alleges that, on February 22, 2020, he attempted to get on his top bunk. In order to get on his bunk, he had to put one foot on the toilet and the other on the sink, and then spring forward to get into the bunk. He had to do this because there were no ladders. In attempting to get on his bunk, he fell approximately five feet to the solid concrete floor, injuring his back and neck. Plaintiff alleges that he tried different methods to access the top bunk, but they did not work.

Plaintiff also alleges that one other inmate was injured the same way, that he filed grievances related to the issue, and that certain officials told him that not having ladders is dangerous and that ladders will be put up in order to prevent injuries.

Based on these allegations, and construing Plaintiff's complaint liberally, the Court finds that Plaintiff's claim against Kings County based on the lack of ladders should proceed past screening.

Plaintiff also alleges that he was forced to sleep on the floor on or around March 3, 2020. Plaintiff's cellmate, Nunez, fell while trying to get on the top bunk, injuring himself. When Bejarno and Cervantes brought Nunez back to the cell from medical, Plaintiff asked these deputies how it would work, because Plaintiff was sleeping on the bottom bunk. These deputies told Plaintiff that because Nunez had a bottom bunk chrono and Plaintiff did not, Plaintiff has to sleep on the top bunk. Plaintiff told these deputies to get ahold of classification and switch Plaintiff out with a different inmate. The deputies refused. Plaintiff told these deputies that he would not sleep on the top bunk because he was injured and would not attempt to get on the top bunk. Plaintiff then told Deputy Anderson the situation. These deputies could

have easily moved Plaintiff to a different bunk instead of choosing to leave Plaintiff sleeping on the floor. Additionally, these deputies were aware of the incident that occurred on February 22, 2020.

Construing Plaintiff's complaint liberally, the Court finds that Plaintiff has stated a cognizable conditions of confinement claim against Bejarno, Cervantes, and Anderson based on his allegations that he had a lower bunk, but, due to these defendants' actions and/or inactions, Plaintiff was forced to give up his lower bunk and had to sleep on the floor for at least one night. See, e.g., Thompson v. City of Los Angeles, 885 F.2d 1439, 1448 (9th Cir. 1989), overruled on other grounds by Bull v. City & Cty. of San Francisco, 595 F.3d 964 (9th Cir. 2010) (the plaintiff's "uncontroverted allegation that [for two nights] he was provided with neither a bed nor even a mattress unquestionably constitutes a cognizable Fourteenth Amendment claim."). The Court finds that Plaintiff has failed to state a claim against any other defendant based on these allegations because there is no indication that any other defendant was involved in forcing Plaintiff to give up his lower bunk or in refusing to switch Plaintiff out with a different inmate.

### C. Medical Needs

"[T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case. The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment. Thus, the plaintiff must prove more than negligence but less than subjective

intent—something akin to reckless disregard." Gordon, 888 F.3d at 1125 (alteration in original) (footnote, citations, and internal quotation marks omitted).

Plaintiff appears to bring a claim for inadequate medical care against several medical professionals and deputies.

As to Plaintiff's claims against Nurse Practitioner Wendy Bachleor, Medical Administrator Gina Ferrera, and Doctor Sidah Naheem, Plaintiff has failed to state a claim. Despite Plaintiff's conclusory allegations to the contrary, Plaintiff alleges that he was treated for his back pain. He was given ibuprofen and Tylenol both before and after he fell from the bed. Then, on April 21, 2020, his medications were changed to Indomethacin and Tramadol. Plaintiff was on Indomethacin for two days and left on Tramadol before he was taken off the Indomethacin. On June 1, 2020, Plaintiff was told that he would receive, among other things, physical therapy. On June 18, 2020, Plaintiff went to his first physical therapy appointment. While Plaintiff clearly believes he should have been given additional care and accommodations sooner, and while Plaintiff has alleged that his medications would sometimes run out, there are no allegations suggesting that Bachleor, Ferrera, or Naheem acted with reckless disregard to Plaintiff's serious medical needs. Even if these medical professionals were negligent in treating Plaintiff, negligence alone is not enough to state a constitutional claim.

Plaintiff also appears to bring a claim against Travato and Chennault for not taking him to medical on May 31, 2020, after he told them that he was in pain and wanted to go to medical. First, there are no allegations suggesting that the failure to immediately take Plaintiff to medical put Plaintiff at a substantial risk of suffering serious harm. And, even if it did, there are no allegations suggesting a reasonable official in the circumstances would have appreciated the high degree of risk involved in not immediately taking Plaintiff to medical. Accordingly, Plaintiff has failed to state a claim against Travato and Chennault based on these allegations.

Plaintiff also appears to bring a claim based on the delay in providing him with mental health treatment. Plaintiff alleges that Ferrera and Brooks did not check on him until May 31, 2020, even though he filed a grievance saying that he felt suicidal on May 28, 2020. However, there is no indication in the complaint that either of these defendants received the grievance

13

earlier and delayed responding to the grievance. There are also no allegations in the complaint suggesting that these defendants were supposed to respond to Plaintiff's grievance sooner or that Plaintiff asked for emergency mental health treatment. After Ferrera and Brooks did respond, Plaintiff was taken to a safety cell and saw someone from the mental health department. There are no allegations in the complaint suggesting that either Ferrera or Brooks exhibited a reckless disregard to a substantial risk of serious harm to Plaintiff. Accordingly, Plaintiff has failed to state a claim against these defendants based on his allegations that it took approximately three days for them to respond to his grievance stating that he felt suicidal.

Finally, Plaintiff brings a claim for inadequate medical care because he was not provided with a wheelchair on February 27, 2020. Plaintiff alleges that on February 27, 2020, he was forced to walk to court instead of being given a wheelchair, even though he was in extreme pain. Bejarno walked Plaintiff to medical, where he dropped Plaintiff off to the transporting deputy, Dusane. Dusane then asked Plaintiff if he had a wheelchair chrono. Plaintiff stated that he did not know. Plaintiff was then forced to walk to the transporting cells while in pain. While Plaintiff was walking he saw Carrasco, who did not intervene.

Liberally construing Plaintiff's complaint, the Court finds that Plaintiff has stated a claim against Carrasco. Plaintiff alleges that Carrasco knew of his condition, and in fact procured a wheelchair for Plaintiff the day before. However, instead of taking reasonable measures to help Plaintiff, Carrasco stayed silent.

The Court finds that Plaintiff has failed to state a claim based on these allegations against any other defendant. As to Dusane, the Court finds that Plaintiff has failed to state a claim because Plaintiff has not sufficiently alleged that Dusane knew of the risk to Plaintiff, or that a reasonable officer would have known of the risk. While Plaintiff alleges that he told Dusane of his back pain, Plaintiff has not sufficiently alleged that his back pain was obvious. There is also no indication that anyone told Dusane about Plaintiff's accident five days before. Moreover, it appears that Dusane denied Plaintiff access to a wheelchair because Plaintiff did not have a wheelchair chrono. Thus, Plaintiff has failed to sufficiently allege that, in these circumstances, a reasonable officer would have known about the risk to Plaintiff in making

Plaintiff walk to court instead of providing him with a wheelchair.

To the extent Plaintiff is attempting to bring this claim against Bejarno, Plaintiff has failed to state a claim because there is no indication that Bejarno had any role in the incident other than walking Plaintiff to medical where he dropped Plaintiff off to the transporting deputy.

Based on the foregoing, the Court finds that Plaintiff has stated a Fourteenth Amendment claim against Carrasco based on inadequate medical care. The Court also finds that Plaintiff has failed to state a Fourteenth Amendment claim based on inadequate medical care against any other defendant.

### D. Retaliation

A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"The Rhodes standard for retaliation claims applies equally to pretrial detainees. See Grenning v. Bisson, 382 F. App'x 574, 575 (9th Cir. 2010) (applying Rhodes to reverse dismissal of pretrial detainee's retaliation claim); Nyland v. Calaveras Cty. Sheriff's Jail, 688 F. App'x 483, 485 (9th Cir. 2017) (applying Rhodes to affirm dismissal of pretrial detainee's retaliation claim)." Kakowski v. Cty. of Sacramento, 2019 WL 4571942, at *3 (E.D. Cal. Sept. 20, 2019).

Plaintiff has not alleged that any defendant retaliated against him because he engaged in protected conduct. Thus, the Court finds that Plaintiff has failed to state a retaliation claim.

### E. Processing of Grievance

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of

appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Plaintiff appears to bring a due process claim against Ferrera based on how she processed Plaintiff's grievances.

As Plaintiff does not have a liberty interest in the processing of his grievances, the Court finds that Plaintiff has failed to state a claim based on his allegations that his grievances were not appropriately processed.

**IV.  CONCLUSION AND RECOMMENDATIONS**

The Court has screened Plaintiff's Second Amended Complaint and finds that Plaintiff's Fourteenth Amendment conditions of confinement claim against defendant Kings County, Plaintiff's Fourteenth Amendment conditions of confinement claim against defendants Bejarno, Cervantes, and Anderson, and Plaintiff's Fourteenth Amendment medical care claim against defendant Carrasco should proceed past the screening stage. The Court also finds that all other claims and defendants should be dismissed.

The Court does not recommend granting further leave to amend. Plaintiff has now filed two amended complaints. Additionally, the Court explained to Plaintiff why his First Amended Complaint failed to state a claim, provided Plaintiff with an opportunity to amend his complaint with the benefit of applicable legal standards, and Plaintiff filed his Second Amended Complaint with the guidance of those legal standards. Thus, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's Fourteenth Amendment conditions of confinement claim against defendant Kings County, Plaintiff's Fourteenth Amendment conditions of confinement claim against defendants Bejarno, Cervantes, and

1  Anderson, and Plaintiff's Fourteenth Amendment medical care claim against
2  defendant Carrasco; and
3   2.  All other claims and defendants be dismissed.
4  These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:   **August 24, 2020**          /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE